## G. & C. MERRIAM CO. v. UNITED DICTIONARY CO.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1906.)

No. 1,234.

1. COPYRIGHTS—BOOKS PUBLISHED ABROAD—STATUTES.
   Rev. St. § 4956 [U. S. Comp. St. 1901, p. 3407], provides that during the existence of a copyright the importation into the United States of any book so copyrighted or any edition thereof, or any plates of the same not made from type set, etc., within the limits of the United States, shall be prohibited, except in certain cases, etc. Held, that such provision was not intended to do more than prohibit the producing abroad of copyrighted books designed for sale in the United States, and had no application to the reproduction in the United States of a book copyrighted in Great Britain which contained no notice of copyright in the United States of a similar book intended for publication in the United States.

2. SAME—WAIVER OF COPYRIGHT.
   Rev. St. § 4956 [U. S. Comp. St. 1901, p. 3407], provides that no person shall be 'entitled to a copyright, unless, on or before the day of publication in the United States or any foreign country, he shall deliver to the librarian of Congress a printed copy of the title of the book and two copies of the book not later than the day of publication in the United States or any foreign country, and section 4962 provides for the insertion of the

copyright notice in the several copies of every edition published, etc. Plaintiff simultaneously published and copyrighted a dictionary in Great Britain and the United States, neither being intended to compete with the other; the English book containing no reference to the American copyright, but fully complying with the copyright laws of Great Britain, as did also the American book with the copyright laws of the United States. *Held*, that complainant's failure to insert a notice of the American copyright in the English work did not constitute a waiver of its American copyright.

3. SAME—COPYRIGHT NOTICE—INSERTION—DIFFERENT BOOKS.

Where the title in the first 3 and last 34 pages of the copyrighted English edition of a dictionary was different from the copyrighted domestic edition, the publisher of the English edition was prohibited by Rev. St. § 4963 [U. S. Comp. St. 1901, p. 3412], from inserting therein a notice of the domestic copyright.

4. SAME—INFRINGEMENT—PUBLICATION—USE OF PART.

An infringement of a copyright may result in the wrongful use of a part as well as the whole of a copyrighted publication.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Copyrights, §§ 52–54.]

5. SAME.

Where complainant simultaneously published and copyrighted a dictionary in England and the United States, the English book being somewhat different from the domestic, the publication in the United States of a photographic reprint of the English edition imported for that purpose constituted an infringement of complainant's copyright.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

For opinion below, see 140 Fed. 768.

This is an appeal from a final decree of the United States Circuit Court for the Northern District of Illinois, dismissing the bill of complaint of the appellant for want of equity, the case having been heard upon the pleadings and an agreed statement of facts. The bill was filed to restrain infringement of copyright in the book entitled "Webster's High School Dictionary." The facts briefly stated are as follows:

Appellant, before the publication in this or any foreign country, was the owner of the literary property in and the right to copyright the book "Webster's High School Dictionary," and on August 9, 1892, published and copyrighted the same simultaneously in Great Britain and the United States. Thereafter appellant continued to publish and sell this book in the United States, complying with all the requirements of the statutes and printing the statutory notice of copyright in every copy published or sold in this country. The book under the name "Webster's Brief International Dictionary" was subsequently published commercially in England under an agreement between appellant and George Bell & Sons entered into on July 18, 1894. This contract expressly provides that George Bell & Sons will not either directly or indirectly sell in or import the book into the United States or sell to others for the purpose of importation, and George Bell & Sons agree to use all reasonable means to prevent such importation by others. Under this contract the book has been published and sold in England. The copies so published and sold in England by George Bell & Sons have not borne the notice of the American copyright, but have been in full compliance with all the provisions of the English copyright law, and appellant has in England a valid and subsisting copyright in the book. No copies of the English book have ever been imported into or sold in the United States either by appellant or George Bell & Sons, or any one acting for or on behalf of either. The appellee, United Dictionary Company, is an Illinois corporation organized in June, 1904, with a capital stock of $1,500. George W. Ogilvie, who was the organizer of defendant corporation, in January, 1905, caused a newsdealer in Chicago to

*cable* to England and procure for him a copy of Webster's Brief International Dictionary. This book was received in due course and turned over to Ogilvie. This and another copy subsequently imported by Ogilvie are the only copies of Webster's Brief International Dictionary, as far as the record shows, that ever came into this country. Upon receipt of the first copy, the appellee, United Dictionary Company, of which Ogilvie is director and principal stockholder, had the pages of Webster's Brief International Dictionary photographed and reproduced verbatim and had plates made which completely reproduced that book and which also reproduced Webster's High School Dictionary except the first 3 and the last 34 pages; 'the remainder of the two books being identical. This reproduction was with full knowledge of the American copyright and of the identity of the books. It is expressly stipulated that "said Ogilvie obtained said copy of said 'Webster's Brief International Dictionary,' not for the purpose of selling said individual copy, but for the purpose and intent of having the United Dictionary Company reprint and republish said book without the consent of either complainant or George Bell & Sons."

Appellee advertised the intended publication of its book in the Publishers' Weekly and has circulated pamphlets and printed matter in which this announcement is made. The book has not yet been published, but will be, unless its publication is restrained. And, if published, will constitute an infringement of appellant's copyright in the book "Webster's High School Dictionary," if that copyright be valid.

The question chiefly argued in this court is whether the failure, under the circumstances of this case, to insert in the books published in England, the copyright notice required by the United States copyright law, works a forfeiture of the United States copyright, notwithstanding an exact and literal compliance with the United States statute in regard to all books published or circulated by or with the consent of appellant in the United States.

Charles N. Judson, Wm. B. Hale, Frank F. Reed, and Edward S. Rogers, for appellant.

Geo. P. Fisher, for appellee.

Stephen H. Olin, amicus curiæ.

Before GROSSCUP and BAKER, Circuit Judges, and WRIGHT, District Judge.

WRIGHT, District Judge. Appellant's copyright of Webster's High School Dictionary was in strict conformity to law, and is unassailable in the United States unless the publication in Great Britain omitting notice of copyright as required by section 4962, Rev. St., deprives it of the right to maintain an action for infringement. Appellee imported two copies of the British publication of the book for its use; that is, to reprint and republish it in this country for sale. The importation and publication is sought to be justified by appellee because the publication in England was printed from type set or plates made within the limits of the United States, and more particularly appellee's insistence is that the publication is justified because of the failure of appellant to insert in the books published in England the copyright notice required by the United States copyright law.

In support of these contentions it is argued that the only prohibition contained in the law is against the importation of books not made from plates from type set in the United States during the life of the copyright, and that the books in question having been made from plates from type set in the United States, there exists no law against the importation of them, and having been lawfully imported, and being thus properly in the United States, and containing no no-

tice therein of a United States copyright they were legally subject to be produced by reprint or publication by any person, notwithstanding the copyright of the United States edition of the book. The prohibition against importation found in section 4956, Rev. St., we think was not intended to do more than its plain terms import, considered with the context of the whole section. Manifestly the object of that prohibition is to prevent from being done abroad, the work of producing copyright books designed for sale in the United States. The prohibition of that section has no application to the facts in this case. The publication of the book in Great Britain was not intended for sale in the United States. Appellant had already provided another edition of the book for sale in the United States by obtaining copyright according to law, and which was duly protected thereby. However, in the ultimate view we entertain of the question involved, we do not consider the absence of a specific prohibition in the statute against the importation of a book in the situation of appellant's English publication, as of controlling effect. The vital question is whether protection can be afforded against infringement of the copyright appellant obtained from the United States, or whether the facts stated constitute an infringement. If the importations of the British book were in large numbers designed for sale in the United States in competition with the domestic copyright, then the question would be not only of illegal importation, but of infringement of the domestic copyright, as well, as the same now is of infringement by reproducing in this country the foreign publication.

It has been argued with force that because section 4956, Rev. St., provides that no person shall be entitled to a copyright unless he shall, on or before the day of publication in this or any foreign country, deliver to the librarian of Congress a printed copy of the title of the book, and also two copies of the book not later than the day of publication thereof in this or any foreign country, that therefore, the publication of the book being, as contended, thereby authorized, the provision in section 4962 for the insertion of the copyright notice in the several copies of every edition published, has reference to the several copies of every edition wherever published, in this or any foreign country.

Appellant did comply with these requirements in obtaining its domestic copyright. The law does not require this to be done in both countries; the requirement being that the copies be delivered before or on the day of publication in this or any foreign country. Appellant having fulfilled this requirement before the day of publication in this country, it had done all the law demanded in this regard. Other than this the provisions of this section relative to the deposit of copies of a publication in a foreign country, the demand for copies to be delivered to the librarian is but supplementary to the provisions of section 4952, amended by Act March 3, 1891, c. 565, 26 Stat. 1110 [U. S. Comp. St. 1901, pp. 3406, 3417], and should be limited to the purposes of that section, which enables authors or proprietors of a book in a foreign language to obtain copyright in this country. No provision is made in that section for a case like the one we are consider-

ing. The only reference in that section to a case like this is contained in the proviso:

"That this act shall only apply to a citizen or subject of a foreign state or nation, when such foreign state or nation permits to citizens of the United States of America the benefit of copyright on substantially the same basis as to its own citizens."

By other legislation it is provided that existence of the conditions described in the proviso shall be determined by the President of the United States by proclamation from time to time, as the purposes of the law may require. So, in the case of a domestic owner of a literary production, which is also of domestic origin and in our own language, which is the case of appellant, we find no special provision in the law for copyright abroad, but do find, in the proviso quoted, that such a case has been anticipated by legislative recognition or sanction, confirmed by executive proclamation, thus pointing out the way, if not creating the right, to citizens of the United States to obtain from foreign nations copyright benefits. Congress did not assume to give to citizens of this country the right to a foreign copyright, but doubtless did all they could do, encouraged foreign nations, who alone could grant the benefits, to do so, and in legal effect authorized citizens of this country to seek copyright benefits in foreign countries upon the conditions provided for them.

Under these circumstances appellant obtained from Great Britain a copyright of the book in question, and was thus induced to publish it in England, which enabled appellee to obtain a copy for its use. So far as appears, the copyright granted by the English government was in strict conformity to the laws of that nation. Indeed, if at all, it had to be as prescribed by the law of England, for Congress had no authority to define the conditions upon which a copyright might be granted by a foreign nation. The Congress by their legislation did not assume such authority, but merely as an act of amity provided that when a foreign state or nation permits to citizens of the United States the benefit of copyright on substantially the same basis as to its own citizens, then a citizen or subject of such foreign state or nation should have the privileges relative to copyright as conferred by law upon citizens of this country. The law of England does permit to citizens of this country the benefit of copyright on substantially the same basis as to its own subjects, as evidenced by the proclamation of the President of the United States.

It is true that the book so copyrighted and published in the foreign country contains no notice that a copyright exists in the United States. The law of England does not require that it should contain such notice, nor such a notice of its own copyright. The English copyright is valid in that country. It was obtained by appellant, a citizen of the United States, with both the legislative and executive invitation and sanction of its own country. Shall it now be held by the courts of the United States that, because of such invitation and sanction, appellant was induced to and did obtain a valid copyright in a foreign nation, it thereby invalidated the one it had obtained in its own country? We do not believe the Congress intended to have their

enactments interpreted to an absurdity such as that would be. It was never intended that the notice of copyright in this country should be inserted in foreign copyright editions of the same book not designed for sale in the United States. In the case of England, if such conditions were held to have been imposed, the effect would be to burden citizens of the United States with conditions that nation had not cast on its own subjects, and this would be inconsistent with the terms of the proviso of the statute hereinbefore quoted, by means of which these reciprocal rights were effected, to the purpose that if foreign nations should permit citizens of the United States the benefit of copyright on substantially the same basis as its own citizens, then the latter should have like benefits in this country. If appellant had inserted a notice of the American copyright in the English editions of the book, would it have been true? It is plain that it would not. There can be no just pretense that the identical matter of the English edition had ever been submitted to the forms of law essential to a copyright in the United States. The title and the first 3 and last 34 pages of the English edition were different from the domestic edition. This being true, is it not evident that to have inserted such notice would have been a violation of section 4963, Rev. St. [U. S. Comp. St. 1901, p. 3412], subjecting the offender to a penalty of $100? It is not to be imagined the law demanded a violation of itself.

An infringement may result in the wrongful use of a part as well as the whole of a publication protected by copyright. Appellant rightfully published its book in England in conformity to the laws of that country, with the approval of the law of its own sovereignty, at the same time having a copyright in the United States entitled to the protection of its laws from illegal infringement. The publication by appellee of the book imported from England would be an infringement of appellant's copyright, and should be enjoined.

The decree of the Circuit Court is reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.