**UNITED STATES v. FIELDS.**

No. 11226.

Circuit Court of Appeals, Eighth Circuit.
March 14, 1939.

Clinton R. Barry, U. S. Atty., of Fort Smith, Ark., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Young M. Smith, Atty., Department of Justice, of Washington, D. C., for the United States.

L. L. Cronkrite and Lee Cazort, of Little Rock, Ark., for appellee.

Before GARDNER and THOMAS, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge.

This is a suit on a policy of war risk insurance. From a judgment for the plaintiff, the government has appealed. The policy was in the face amount of $5,000. It contained the usual provision that, in case of total and permanent disability, $28.75 per month should be paid during the life of the insured.

The appellee claimed in his petition (filed February 27, 1932), that he became permanently and totally disabled while the policy was in force.

The defendant, now appellant, by its answer, denied the averments of total and permanent disability.

The sole issue submitted to the jury by the trial court was whether the appellee "became and was totally and permanently disabled on the 2nd day of October, 1919." The verdict of the jury was in the affirmative, and judgment followed.

■ While not waiving other points, the appellant now urges earnestly that the trial court should have directed a verdict for it at the close of the evidence. This contention requires an examination and survey of all the evidence in the case. In considering and weighing the evidence the facts in favor of appellee should be accepted as true, and all inferences fairly deducible therefrom should be drawn in his favor.

The appellee's military record extended from the date of his induction into the army on September 18, 1917, until his honorable discharge on August 12, 1919. His policy of insurance was issued soon after his enlistment and expired for non-payment of premiums on the 2nd day of October, 1919, the date when it was found by the jury that he became totally and permanently disabled. He paid no premiums after his discharge from the army. While on the battle-front as a combat soldier he sustained a gunshot wound to his right leg, on October 15, 1918. This was a severe wound near the ankle and ultimately, to-wit, April 29, 1922, caused the amputation of the lower part of his leg.

Soon after his return home, and on August 22, 1919, the appellee was examined by Dr. A. W. Rye, who said he found an angry and painful red spot on appellee's leg above the gunshot wound. At that time, he said the appellee was suffering considerable pain, and that the wound itself had become a running or "suppurative" sore. Dr. Rye found what he believed to be an enlarged heart, and diagnosed the heart condition as myocarditis. In answer to an unopposed question he said that the appellee's condition would prevent him at that time from following a substantially gainful occupation. It was the opinion of Dr. Rye that the heart condition as found by him was permanent.

Prior to his evidence as a witness, and on December 17, 1935, Dr. Rye had made a signed statement to the government wherein he said that he had treated the veteran from March to November, 1920, and then recalled that the veteran was "bothered with bronchitis and a bad leg." On cross-examination at the trial he stated that he had found an old account book since giving his signed statement, which showed that he had treated the veteran in August, 1919. He did not produce his account books at the trial, but said that he relied upon his memory for the reason that, "when a man has a serious ailment, a thing of that kind never leaves a doctor's memory." Dr. Rye further testified that the veteran operated a store at Russellville, "at which he sells fruit, vegetables and groceries, but whenever I have seen the veteran in his place of business he was seated."

Lay witnesses said that they had had occasion to observe the veteran's wounded limb about the time he returned from the service, in August, 1919, and that it was "inflamed, rather red, angry," and, one said, "it looked to me like a chronic sore."

Several other physicians testified for appellee relative to examinations and treatments of the veteran, but such examinations were made in the years 1931 and 1932, and in 1936 and 1938. These doctors found the veteran suffering from his wounded limb and a heart ailment. They believed at that time the heart trouble was incurable.

Another lay witness testified that he visited the veteran either in 1921 or 1922. The veteran then owned and operated a filling station, but employed a boy to do the work. At the time of this visit the veteran "was in a chair and had his leg over in another one on a pillow." In answer to a question as to his physical condition, the witness said: "I seen him several times when he was being hauled in an old buggy, hunting for the doctor to dress his leg. I could tell from the way he was taking on, or the way he looked that he was not able to do any work."

This was the only evidence on behalf of the plaintiff which might tend to throw light on the condition of the appellee on October 2, 1919.

The testimony of physicians who examined him at a much later date tended to show that at that time he was incapacitated because of his injured limb and heart trouble. These examinations were made, as heretofore stated, in the years 1931 and 1932, and 1936 and 1938. And such examinations were made after the appellee

had made a demand upon the government for payment of his insurance.

Although appellee was present at the trial, he did not testify.

It is unnecessary to review the evidence on behalf of the government for the reason that none of it can be construed as aiding the appellee's case. On the contrary, it tended very strongly to show that the appellee was not totally and permanently disabled at the time asserted by him.

Other facts, if they become pertinent, will be stated in the course of this opinion.

1. The evidence chiefly relied upon by the appellee to show his total and permanent disability on October 2, 1919, was that of Dr. A. W. Rye. This witness apparently was a practicing physician in the vicinity of the appellee's home to which he returned upon his discharge from the army.

When Dr. Rye was on the witness stand he said that the appellee was suffering in August, 1919, from his wounded right leg and from heart trouble. He expressed the belief that the appellee could not follow a substantially gainful occupation "at that time." Dr. Rye examined the appellee again in 1936. He said that the heart condition was substantially the same as it was in August, 1919, "which condition in my opinion will remain throughout the veteran's lifetime."

Dr. C. K. Campbell, who deceased before the trial, also treated the appellee after his return from the army. During such treatments the wife and son of the physician had an opportunity to see the wounded limb. They testified that it was inflamed and looked like a chronic sore. These observations were made before the amputation of a portion of the leg in April, 1922.

The appellee was entitled, of course, to have consideration given to his condition as found by the physicians many years later, insofar as such condition would aid in resolving the question of the totality and permanency of his disability at the time claimed by him. There was no evidence that on the 2nd of October, 1919, the injured limb of the appellee would permanently and totally disable him. According to Dr. Rye, it may be inferred, the condition was such at the time of his examination on August 22, 1919, as to totally temporarily disable him. There was nothing, however, disclosed in the condition of the limb at that date to justify the inference that there would be a permanent total disability. The loss of a limb does not constitute permanent total disability. Thompson v. United States, 8 Cir., 65 F.2d 897; United States v. Weeks, 8 Cir., 62 F.2d 1030. Neither did it appear from the evidence that the heart condition as found by Dr. Rye would totally and permanently disable the appellee, nor would the two afflictions combined have that effect. Dr. Rye was careful to say, in answer to a question as to the appellee's ability to follow a substantially gainful occupation, that: "He couldn't at that time." (Referring to the condition he found on August 22, 1919.)

Dr. G. L. Hardgraves, who gave evidence for the appellee, said that he examined him in 1931 or 1932. He was asked a direct question: "From your examination was he able to follow any substantially gainful occupation at that time?" The answer was: "Not at that time."

The implication from the answers of these witnesses is that any total disability suffered by appellee was temporary. It was entirely speculative and conjectural on the part of the jury to find that the plaintiff was totally and permanently disabled on the 2nd of October, 1919.

The opinion of the medical witness was not substantial evidence. As stated in the case of United States v. Spaulding, 293 U.S. 498, loc. cit. 506, 55 S.Ct. 273, loc. cit. 276, 79 L.Ed. 617: "The medical opinions that respondent became totally and permanently disabled before his policy lapsed are without weight. Clearly the experts failed to give proper weight to his fitness for naval air service or to the work he performed, and misinterpreted 'total permanent disability' as used in the policy and statute authorizing the insurance. Moreover, that question is not to be resolved by opinion evidence. It was the ultimate issue to be decided by the jury upon all the evidence in obedience to the judge's instructions as to the meaning of the crucial phrase and other questions of law."

Although the appellee was present at the trial, he did not take the stand in his own behalf. The rule is that: "The nonappearance of a litigant at the trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that

he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention." 22 C.J. Section 57, p. 121.

■ The appellee knew more than any one else the facts of his own condition. The government, under the circumstances, was entitled to the benefit of the inference that his own testimony would not have aided him in his contention that he was totally and permanently disabled at the time asserted by him.

■ In connection with appellee's failure to testify in his own behalf, there is another circumstance which takes rank as strong evidence against his contention. The appellee asserted that he became totally and permanently disabled while his policy was yet in force, but he made no demands upon the government for the payment of benefits promised him, until May, 1931. A period of almost twelve years had elapsed from the time of his alleged total and permanent disability until the fact was asserted by him. Under the authorities, it became his duty to excuse or justify the delay. In Lumbra v. United States, 290 U.S. 551, loc. cit. 560, 54 S.Ct. 272, loc. cit. 276, 78 L.Ed. 492, the court said: "His own statements to medical men, their diagnoses, his repeated applications to the government for compensation, and his failure earlier to assert any claim, show that for a decade he did not believe that he was totally and permanently disabled when he let his policy lapse May 31, 1919. And in the absence of clear and satisfactory evidence explaining, excusing, or justifying it, petitioner's long delay before bringing suit is to be taken as strong evidence that he was not totally and permanently disabled before the policy lapsed." See, also, Miller v. United States, 294 U.S. 435, loc. cit. 441, 55 S.Ct. 440, 79 L.Ed. 977.

■ From the foregoing the conclusion is inescapable that the appellee offered no substantial evidence to the jury that he was permanently and totally disabled on October 2, 1919; but, on the contrary, his failure to testify was "strong evidence that he was not totally and permanently disabled before the policy lapsed."

It is unnecessary to consider other points presented by the appellant for the reason that the foregoing is sufficient to warrant a reversal of the judgment, and it is so ordered.