BOUVÉ, Register of Copyrights, v. TWEN-
TIETH CENTURY–FOX FILM
CORPORATION.

No. 7741.

United States Court of Appeals for the
District of Columbia.

Decided July 14, 1941.

Francis M. Shea, J. F. Mothershead, H. L. Godfrey, Edward M. Curran, and William S. Tarver, all of Washington, D. C., for appellant.

Fulton Brylawski, William B. Wolf, and Simon Fleishman, all of Washington, D. C., for appellee.

Francis Gilbert, of New York, N. Y., amicus curiae, for Standard Music Publishers' Ass'n of the United States, Inc.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellee deposited in the Copyright Office two copies of printed matter, bound together in book form and entitled "In Old Chicago." It tendered two dollars in payment of the registration fee. The Register of Copyrights refused registration upon the ground that the material was not a *book* but, instead, was page proof of twenty *contributions to periodicals* within the meaning of Section 12 of the Copyright Act;[1] hence, that each contribution must be separately registered; and that a separate fee of two dollars must be paid for the registration of each.

Thereupon, appellee petitioned for a writ of mandamus to compel the Register to accept the application for registration and to register the *book* in the Copyright Office. In his answer, appellant took the further position that even if the material did constitute a book, the copies deposited were not the *best edition,* as required by Section 12 of the Act. The District Court rejected appellant's contentions and ordered him to register the claim of copyright in accordance with appellee's application and to issue a certificate of registration.

The first question presented on this appeal is, therefore, whether the Register has any discretionary power in connection with the registering of works subject to copyright. Section 10 of the Act[2] provides that a person entitled to secure a copyright may obtain registration of his claim by complying with the provisions of the Act, and upon compliance the Register *shall* issue the certificate provided for in Section 55.[3] Section 54[4] provides that whenever a deposit has been made of a copy of any work under the provisions of the Act, the Register *shall* make entry thereof in his record books. Section 55 provides that in the case of each such entry the claimant shall be entitled to a certificate of registration. Section 61 of the Act provides that: "The register of copyrights shall receive, and the persons to whom the services designated are rendered shall pay, the following fees: For the registration of any work subject to copyright, deposited under the provisions of this title, $2, which sum is to include a certificate of registration under seal: * *."[5] If these were the only pertinent sections there might be merit in the contention of amicus curiae, which takes the extreme position that the Register is only a ministerial officer. However, there are several other sections which must be read in order to determine the question.

Section 53[6] of the Act provides that: "Subject to the approval of the Librarian of Congress, the register of copyrights shall be authorized to make rules and regulations for the registration of

---

[1] 17 U.S.C.A. § 12: "After copyright has been secured by publication of the work with the notice of copyright as provided in section 9 of this title, there shall be promptly deposited in the copyright office or in the mail addressed to the register of copyrights, Washington, District of Columbia, two complete copies of the best edition thereof then published, * * * or if such work be a contribution to a periodical, *for which contribution special registration is requested,* one copy of the issue or issues containing such contribution; * *." (Italics supplied)

[2] 17 U.S.C.A. § 10.
[3] 17 U.S.C.A. § 55.
[4] 17 U.S.C.A. § 54.
[5] 17 U.S.C.A. § 61.
[6] 17 U.S.C.A. § 53.

claims to copyright as provided by this title." Certainly, this must contemplate the exercise of some discretion, not only in the making, but in the administration of such rules. And the Register, in 1926, with the approval of the Librarian of Congress, issued rules and regulations,[7] included in which are the following:

"6. *(b) Periodicals.*—This term includes newspapers, magazines, reviews, and serial publications appearing oftener than once a year; bulletins or proceedings of societies, etc., which appear regularly at intervals of less than a year; and, generally, periodical publications which would be registered as second-class matter at the post office. Serial publications which are not clearly 'periodicals' should be registered as books and the application for registration should be accompanied by the required affidavit.

\* \* \* \* \*

"24. Promptly after first publication of the work with the copyright notice inscribed, two *complete* copies of the best edition of the work then published must be sent to the Copyright Office, with a *proper application* for registration *correctly filled out* and a money order for the *amount of the legal fee.*" (Italics supplied)

▮ Even amicus curiae concedes that the Register may properly refuse to accept for deposit and registration "objects not entitled to protection under the law." It rationalizes this concession on the theory that the Register has no power to accept anything other than the writings of an author. It is true that Section 4 of the Act[8] speaks in those terms, but its actual language is:

"The works for which copyright may be secured \* \* \* shall *include* all the writings of an author." (Italics supplied) And Section 5 then goes on to provide that the application shall specify to which of the thirteen classes, therein set forth, the work in which copyright is claimed belongs.[9] These thirteen classes of works which— whether they can be described properly as *writings*—are, nevertheless, entitled to registration, include maps; works of art; models or designs for works of art; reproductions of works of art; drawings or plastic works of a scientific or technical character; photographs; prints and pictorial illustrations; and motion pictures. And, finally, Section 5 provides that the specifications which appear in the thirteen classes *shall not be held to limit* the subject matter of copyright as defined in Section 4.[10] In light of recent trends and the divergent philosophies of different schools of thought as to what constitutes *art,* to say nothing of the large possibilities inherent in *plastic works of a scientific or technical character,* it seems obvious that, unless the Register has some power to control deposits for copyright, it may soon become necessary to build a new library annex. It seems obvious, also, that the Act establishes a wide range of selection within which discretion must be exercised by the Register in determining what he has no power to accept. The formula which he must apply is a more difficult one than that of the Recorder of Deeds, upon which appellee relies by way of analogy.[11] Nor would there seem to be any doubt that the Register may refuse to issue a certificate

---

[7] 17 U.S.C.A. pp. 181, 182, 183.

[8] 17 U.S.C.A. § 4.

[9] 17 U.S.C.A. § 5: "Classification of works for registration. The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs:

"(a) Books, including composite and cyclopedic works, directories, gazetteers, and other compilations;

"(b) Periodicals, including newspapers;

"(c) Lectures, sermons, addresses (prepared for oral delivery);

"(d) Dramatic or dramatico-musical compositions;

"(e) Musical compositions;

"(f) Maps;

"(g) Works of art; models or designs for works of art;

"(h) Reproductions of a work of art;

"(i) Drawings or plastic works of a scientific or technical character;

"(j) Photographs;

"(k) Prints and pictorial illustrations including prints or labels used for articles of merchandise;

"(l) Motion-picture photoplays;

"(m) Motion pictures other than photoplays.

"The above specifications shall not be held to limit the subject matter of copyright as defined in section 4 of this title, nor shall any error in classification invalidate or impair the copyright protection secured under this title."

[10] Cf. Deutsch v. Arnold, 2 Cir., 98 F. 2d 686.

[11] D.C.Code (1929) tit. 25, § 221: "\* \* \* all deeds, contracts, and other instruments in writing affecting the title or ownership of any real estate or personal property in the District which shall have been duly acknowledged and certified. \* \*."

of registration until the required fee is paid,[12] and until other formal requisites of the Act have been satisfied.[13]

It does not follow, however, that he has power to exercise uncontrolled discretion in refusing registration of material which is subject to copyright, merely because he disagrees with the author as to how it should be classified. The government does not contend that the Register is an officer whose acts are beyond judicial review and correction. Its position is that his powers are similar to those exercised by the Postmaster General in admitting articles into the mails;[14] by the Recorder of Deeds in recording instruments;[15] and, perhaps, by the Register of the Land Office in determining whether public lands fall within the category of lands subject to sale and pre-emption.[16] It contends, generally (1) that the Register's decision should be accepted as conclusive on questions of classification or identification, even though they may involve mixed questions of law and fact; (2) that his conclusion on questions of law alone should likewise be accepted unless the court is satisfied that it is clearly erroneous; and it contends, specifically (3) that the Register's determination that appellee's application did not comply with the conditions of the Act cannot be set aside unless founded on a clearly erroneous conclusion of law.

Whatever may be the merits of this contention, in its three phases, in our view the District Court correctly held that the determination made by the Register was re-viewable in the present case; that it was founded on a clearly erroneous conclusion of law; that the material deposited by appellee was a *book*, within the meaning of Section 5 of the Act; and that it was entitled to registration of its claim of copyright therein, and to issuance of a certificate. No real question of fact is in dispute in the present case. On argument the government conceded freely that, tested by the usual mechanical standards of book-making, the material deposited satisfied the requirements. There is also no question that the material consisted of the writings of an author, and that the claim of copyright was entitled to registration; in fact that it was the duty of appellee to make the deposit.[17]

▆ If the deposited material was and is a book, then the fee which was tendered was sufficient and appellant's duty to register was imperative and unqualified.[18] The only remaining question, therefore, is whether, within the meaning of the Act, the material is a book. This is a question of law.[19] And it is a question of law which must be answered, not in terms of the Register's power to classify material deposited with him, but in terms of his power to refuse registration. The relief asked in the District Court is not dependent upon classification. The government concedes that the Act does not expressly authorize the Register to determine whether an applicant has complied with the requirements imposed therein, as a condition of registration.[20] But assuming that he has

[12] 17 U.S.C.A. §§ 61, 10.

[13] Cf. 17 U.S.C.A. §§ 7, 8, 9, 12, 15, 18. Cf. also, 30 Op.Atty.Gen. 422, 424–425.

[14] Bates & Guild Co. v. Payne, 194 U. S. 106, 108–110, 24 S.Ct. 595, 48 L.Ed. 894; Smith v. Hitchcock, 226 U.S. 53, 58, 33 S.Ct. 6, 57 L.Ed. 119; Farley v. Heininger, 70 App.D.C. 200, 202, 203, 105 F.2d 79, 81, 82, certiorari denied, 308 U.S. 587, 60 S.Ct. 110, 84 L.Ed. 491, and authorities there cited.

[15] Dancy v. Clark, 24 App.D.C. 487.

[16] Litchfield v. Register & Receiver, 76 U.S. 575, 577, 578, 19 L.Ed. 681.

[17] 17 U.S.C.A. §§ 12, 13. Cf. Washingtonian Publishing Co. v. Pearson, 306 U.S. 30, 40, 59 S.Ct. 397, 83 L.Ed. 470.

[18] 17 U.S.C.A. § 10. Cf. United States ex rel. Everson v. Young, 26 Wash.L.Rep. 546; Grant v. Raymond, 6 Pet. 218, 241, 8 L.Ed. 376.

[19] Sonn v. Magone, 159 U.S. 417, 421, 16 S.Ct. 67, 40 L.Ed. 203 (citing Marvel v. Merritt, 116 U.S. 11, 6 S.Ct. 207, 29 L.Ed. 550; Nix v. Hedden, 149 U.S. 304, 13 S.Ct. 881, 37 L.Ed. 745; Cadwalader v. Zeh, 151 U.S. 171, 14 S.Ct. 288, 38 L.Ed. 115; Saltonstall v. Wiebusch, 156 U.S. 601, 15 S.Ct. 476, 39 L.Ed. 549); W. P. Brown & Sons Lumber Co. v. Louisville & Nashville R. Co., 299 U.S. 393, 397, 57 S.Ct. 265, 81 L.Ed. 301. Cf. A. Zanmati & Co. v. United States, 2 Cir., 153 F. 880; Weir v. McGrath, D.C.S.D. Ohio, 52 F.2d 201, 203–205; Moran v. Cobb, App.D.C., 120 F.2d 16. But cf. 28 Op.Atty.Gen. 557.

[20] The Act (§ 10) provides that registration may be obtained only by one entitled to secure copyright, who has complied with the Act, including the deposit of copies. No copyright may be had in the original text of any work in the public domain or in any publication of the United States Government (§ 7). A citizen of a foreign country cannot secure a copyright unless he is domiciled in the United States at the time of first

full power to classify deposited material, still, this gives him no power to refuse registration of a claim of copyright, which has been already secured by publication and notice;[21] if the claim is based upon material which is actually the subject of copyright. If the privilege of registration is dependent at all upon classification, it is true in only a limited sense. Although the first sentence of Section 5[22] might suggest that accurate classification is a prerequisite to registration, the last sentence of the section makes clear that it is not; providing expressly as it does: " * * * nor shall any error in classification invalidate or impair the copyright protection secured under this title."

■ To support his interpretation of the law, the Register relies upon certain language of Section 12.[23] But that language has an entirely different significance. If it had been placed in Section 5, as one of the classes for registration, it might have afforded some basis for argument. It refers, instead, to a situation in which *special registration is requested* of a contribution to a periodical; in which case the Act provides that only one copy of the issue of the periodical which contains the contribution need be deposited, instead of two, as in other cases. It is not contended that any such request for special registration was made in the present case. To the contrary, registration was demanded of a book under Section 5(a), and two copies were deposited. The Register is attempting to convert this provision, which relates to a request for special registration, into an arbitrary requirement, which would vary the provisions of Section 5. Obviously, he has no power thus to amend the Act.

■ The important consideration in the mind of the Register seems to be the number of fees which he is entitled to collect. But this does not seem to have been an important legislative consideration. Sec-

tion 61 provides: " * * * That only one registration at one fee shall be required in the case of several volumes of the same book deposited at the same time."[24] Books are frequently constituted of collections of letters, maps, lectures, sermons, addresses, dramatic and musical compositions, each one of which alone would be entitled to separate registration. But the law does not *require* separate registration, nor is such a requirement implicit in its terms. Instead, the language of Section 61, above quoted, reveals a contrary intent, even where separate volumes are concerned. We see no reason to assume a requirement of separate registration, as applied to the facts of the present case, merely because the book which was deposited revealed on its face that the material was to be used in serialized form. Many books are republished as serials and no reason appears for penalizing a publisher on account of his foresight in anticipating such republication. It might as well be contended that separating a book into chapters should require separate registration of each.

It is impossible even to find a plausible basis for the Register's position, upon practical considerations, apart from increased fees. Certainly, the convenience and expedition of the work of his office will not be promoted by making twenty registrations and issuing twenty certificates where one would accomplish the same purpose. Moreover, notice to the world and convenience to other writers would be better accomplished in such a case by a single deposit and a single registration.

■ As for the government's contention that the copies deposited were not of the best edition, the answer is that they were of the only edition published. The government suggests as a standard, a form suitable for inclusion in a "library" collection for public use. Presumably, no

---

publication of the work, or unless the nation of which he is a citizen extends copyright to United States citizens on substantially the same basis as to its own citizens (§ 8). Prior to registration, copyright may be secured by publication (§ 12) with such notice as the Act prescribes for the particular kind of work (§§ 9, 12, 18). If the work is a "book" it must have been produced in accordance with the manufacturing provisions of Section 15, and two copies of the "best edition then published" must be deposited (§ 12). If it is a "contribu-

tion to a periodical" within the application of the Act, one copy of the periodical must be deposited (§ 12).

[21] 17 U.S.C.A. § 9. Cf. Washingtonian Publishing Co. v. Pearson, 306 U.S. 30, 37, 59 S.Ct. 397, 83 L.Ed. 470.

[22] 17 U.S.C.A. § 5.

[23] 17 U.S.C.A. § 12: "* * * or if such work be a contribution to a periodical, *for which contribution special registration is requested*, one copy of the issue or issues containing such contribution; * *." (Italics supplied)

[24] 17 U.S.C.A. § 61.

question would be raised concerning the character, as books, of some highly prized "first editions" and incunabula, which are no more substantial in form and no better printed, upon no more substantial paper, than are the exhibits in this case.[25] This contention, we conclude, is equally without merit as the first one.

We are persuaded by all these considerations that the Register has acted upon a clearly erroneous conclusion of law; that he has refused to perform a ministerial duty imposed upon him by the law; and that the order of the District Court was correct.

Affirmed.

[25] Cf. Scoville v. Toland, 21 Fed.Cas. 863, 864, No. 12,553.