**ROTH GREETING CARDS, Appellant,**

v.

**UNITED CARD COMPANY, an Illinois corporation, Appellee.**

**No. 23067.**

United States Court of Appeals,
Ninth Circuit.

July 10, 1970.

Willard H. Horwich (argued), and Morris W. Young, Beverly Hills, Cal., for appellant.

Harvey Grossman (argued), Morton Boren, Henry J. Shames, of Pacht, Ross, Warne, Bernhard, Sears & Nutter, Los Angeles, Cal., for appellee.

Before HAMLEY, KOELSCH and KILKENNY, Circuit Judges.

HAMLEY, Circuit Judge:

Roth Greeting Cards (Roth) and United Card Company (United), both corporations, are engaged in the greeting card business. Roth brought this suit against United to recover damages and obtain injunctive relief for copyright infringement of seven studio greeting cards.[1] After a trial to the court without a jury, judgment was entered for defendant. Plaintiff appeals.

Roth's claim involves the production and distribution by United of seven greeting cards which bear a remarkable resemblance to seven of Roth's cards on which copyrights had been granted. Roth employed a writer to develop the textual material for its cards. When Roth's president determined that a tex-

---

1. While Roth also sought relief on the ground of unfair competition, no evidence was introduced on that phase of the case, and the matter of unfair competition does not concern us on this appeal.

tual idea was acceptable, he would integrate that text into a rough layout of a greeting card with his suggested design for the art work. He would then call in the company artist who would make a comprehensive layout of the card. If the card was approved, the artist would do a finished layout and the card would go into production.

During the period just prior to the alleged infringements, United did not have any writers on its payroll. Most of its greeting cards came into fruition primarily through the activities of United's president, Mr. Koenig, and its vice-president, Edward Letwenko.

The source of the art and text of the cards of United, here in question, is unclear. Letwenko was unable to recall the origin of the ideas for most of United's cards. He speculated that the gags used may have come from plant personnel, persons in bars, friends at a party, Koenig, or someone else. He contended that the art work was his own. But he also stated that he visited greeting card stores and gift shows in order to observe what was going on in the greeting card business. Letwenko admitted that he may have seen the Roth cards during these visits or that the Roth cards may have been in his office prior to the time that he did his art work on the United cards.

On these facts, the trial court held for defendant on alternative grounds, lack of jurisdiction and lack of infringement of any copyrightable material.

The trial court based its jurisdictional holding on 17 U.S.C. § 13. This statute provides that no action for infringement of copyright "shall be maintained" until the provisions of Title 17 of the United States Code with respect to the deposit of copies and registration of such work "shall have been complied with."

The provisions of that title with respect to the deposit of copies and registration, insofar as here relevant, are 17 U.S.C. §§ 10, 13 and 209. Under these provisions one who desires to copyright his work by publication: (1) publishes the work with an attached notice of copyright, (2) promptly deposits, in the copyright office or in the mail addressed to the Register of Copyrights, two completed copies of the work and (3) pays the prescribed fee. If these steps have been properly performed it is the duty of the Register of Copyrights to issue a certificate of registration under the seal of the copyright office.

Roth followed the described three-step procedure in seeking copyright protection for its greeting cards on June 6, 1966. The copyright office returned the applications for a change of category of registration. The revised applications were placed in the mail to the copyright office on July 27, 1966, and received there on July 29, 1966. Roth filed this action on July 27, 1966, which was the same day it mailed the revised applications, but two days before they were received by the copyright office.

In holding that Roth failed to comply with 17 U.S.C. § 13, the district court in effect held that an action is "maintained" within the meaning of that statute when it is instituted. The court apparently reasoned therefrom that: (1) under section 13, a district court does not acquire subject-matter jurisdiction of a copyright infringement suit upon the filing of the complaint, if relevant revised copyright applications, required by the copyright office, are not then on file with that office; and (2) jurisdiction is not subsequently conferred upon receipt of the revised applications by the copyright office prior to judgment, at least in the absence of an amended complaint filed after such event.

■ The cases appear to be divided on the question of whether "maintained," as used in 17 U.S.C. § 13 means "begun" or "continued." But we need not resolve that question, for there are three other reasons why, in our opinion, the district court had subject-matter jurisdiction. *First*, when plaintiff placed the revised applications in the mail on July 27, 1966, it had done everything required of it

under the copyright law with respect to the deposit of copies and registration and could therefore, on that day "maintain" that action, giving the term "maintain" the strict construction the district court adopted; *second*, the revised copyright applications, made necessary by the incorrect original classification, relate back to the date of filing of the original applications, which was before the complaint was filed;[2] and *third*, the pretrial conference order filed on December 4, 1967, constituted in effect an amended pleading which, being subsequent to the filing of the revised applications, sufficiently satisfied the most technical application of 17 U.S.C. § 13. That pretrial order does not mention the section 13 problem, for defendant did not then advance such a contention. But it specifically recites "* * * this order shall supplement the pleadings and govern the course of the trial of this cause. * * *"

Accordingly we conclude that the district court judgment is not sustainable on jurisdictional grounds.

Turning to the merits, the trial court found that the art work in plaintiff's greeting cards was copyrightable, but not infringed by defendant. The trial court also found that, although copied by defendant, the wording or textual matter of each of the plaintiff's cards in question consist of common and ordinary English words and phrases which are not original with Roth and were in the public domain prior to first use by plaintiff.

Arguing that the trial court erred in ruling against it on merits, Roth agrees that the textual material involved in their greeting cards may have been in the public domain, but argues that this alone did not end the inquiry into the copyrightability of the entire card. Roth argues that "[I]t is the arrangement of the words, their combination and plan, together with the appropriate art work. * * *" which is original, the creation of Roth, and entitled to copyright protection.

■ In order to be copyrightable, the work must be the original work of the copyright claimant or of his predecessor in interest. M. NIMMER, COPYRIGHT (hereafter NIMMER), § 10 at 32 (1970). But the originality necessary to support a copyright merely calls for independent creation, not novelty. Alfred Bell & Co., Ltd. v. Catalda Fine Arts, Inc., 191 F.2d 99, 102 (2d Cir. 1951). *Cf.* Baker v. Selden, 101 U.S. 99, 102–103, 25 L.Ed. 841 (1879).

■ United argues, and we agree, that there was substantial evidence to support the district court's finding that the textual matter of each card, considered apart from its arrangement on the cards and its association with artistic representations, was not original to Roth and therefore not copyrightable.[3] However, proper analysis of the problem requires that all elements of each card, including text, arrangement of text, art work, and association between art work and text, be considered as a whole.

■ Considering all of these elements together, the Roth cards are, in our opinion, both original and copyrightable. In reaching this conclusion we recognize that copyright protection is not available for ideas, but only for the tangible expression of ideas. Mazer v. Stein, 347 U.S. 201, 217, 74 S.Ct. 460, 98

2. Title 17, U.S.C. § 5, establishing classification of works for registration, concludes with these words: "* * * nor shall any error in classification invalidate or impair the copyright protection secured under this title." In Bouvé v. Twentieth Century-Fox Film Corp., 74 App.D.C. 271, 122 F.2d 51 (1941), the court, relying on this language, held that any power the Register of Copyrights has to classify deposited material gives him no power to refuse registration of a claim of copyright, which has been already secured by publication and notice. *See also.* Peter Pan Fabrics, Inc. v. Dan River Mills, Inc., 295 F.Supp. 1366, 1368 (S.D.N.Y.1969).

3. Thus, if United had copied only the textual materials, which were not independently copyrightable, United might have been able to do so with impunity. Jackson v. Quickslip Co., 110 F.2d 731 (2d Cir. 1940).

L.Ed. 630 (1954). We conclude that each of Roth's cards, considered as a whole, represents a tangible expression of an idea and that such expression was, in totality, created by Roth. *See* Dorsey v. Old Surety Life Ins. Co., 98 F.2d 872, 873 (10th Cir. 1938).

■ This brings us to the question of infringement. Greeting cards are protected under 17 U.S.C. § 5(a) or (k) as a book, Jackson v. Quickslip Co., Inc., 110 F.2d 731 (2d Cir. 1940), or as a print, 37 C.F.R. § 202.14. They are the embodiment of humor, praise, regret or some other message in a pictorial and literary arrangement. As proper subjects of copyright, they are susceptible to infringement in violation of the Act. Detective Comics, Inc. v. Bruns Publications, Inc., 111 F.2d 432 (2d Cir. 1940).

■ To constitute an infringement under the Act there must be substantial similarity between the infringing work and the work copyrighted; and that similarity must have been caused by the defendant's having copied the copyright holder's creation. The protection is thus against copying—not against any possible infringement caused when an independently created work coincidentally duplicates copyrighted material. Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2d Cir. 1936).

It appears to us that in total concept and feel the cards of United are the same as the copyrighted cards of Roth. With the possible exception of one United card (exhibit 6), the characters depicted in the art work, the mood they portrayed, the combination of art work conveying a particular mood with a particular message, and the arrangement of the words on the greeting card are substantially the same as in Roth's cards. In several instances the lettering is also very similar.

It is true, as the trial court found, that each of United's cards employed art work somewhat different from that used in the corresponding Roth cards. However, "[T]he test of infringement is whether the work is recognizable by an ordinary observer as having been taken from the copyrighted source." White-Smith Music Pub. Co. v. Apollo Company, 209 U.S. 1, 17, 28 S.Ct. 319, 323, 52 L.Ed. 655 (1907), Bradbury v. Columbia Broadcasting System, Inc., 287 F.2d 478, 485 (9th Cir. 1961).

The remarkable similarity between the Roth and United cards in issue (with the possible exception of exhibits 5 and 6) is apparent to even a casual observer. For example, one Roth card (exhibit 9) has, on its front, a colored drawing of a cute moppet suppressing a smile and, on the inside, the words "i wuv you." With the exception of minor variations in color and style, defendant's card (exhibit 10) is identical. Likewise, Roth's card entitled "I miss you already," depicts a forlorn boy sitting on a curb weeping, with an inside message reading "* * * and You Haven't even Left * * *" (exhibit 7), is closely paralleled by United's card with the same caption, showing a forlorn and weeping man, and with the identical inside message (exhibit 8).

■■ The question remains whether United did in fact copy the Roth cards. Since direct evidence of copying is rarely available, copying may be established by proof of access and substantial similarity. NIMMER § 141.2 at 613. Although in some circumstances the mere proof of access and substantial similarity will not demand that the trier automatically find copying, the absence of any countervailing evidence of creation independent of the copyrighted source may well render clearly erroneous a finding that there was not copying.

■ In the present case there was clear and uncontradicted testimony establishing United's access to the Roth cards. United brought Roth cards to its offices. It sent its employees out to gift shows and retail stores where the Roth cards were on display to observe "what the competition was doing." In addition, there was testimony almost compelling the inference that it was United's practice to look at the cards produced by

other companies and make similar cards for sale under the United label. These circumstances, together with the marked similarity between the cards on which this suit was brought, with the possible exception of one card, convince us that each of United's cards in question, considered as combined compositions of art and text, were in fact copied from the Roth cards. It follows that there was infringement. *See* Detective Comics, Inc. v. Bruns Publications, Inc., 111 F.2d 432 (2d Cir. 1940).

The judgment is therefore reversed and the cause is remanded for further proceedings consistent with this opinion.

KILKENNY, Circuit Judge (dissenting).

The majority agrees with a specific finding of the lower court that the words on the cards are not the subject of copyright. By strong implication, it likewise accepts the finding of the trial court that the art work on the cards, although subject to copyright, was not infringed. Thus far, I agree.

I cannot, however, follow the logic of the majority in holding that the uncopyrightable words and the imitated, but not copied art work, constitutes such total composition as to be subject to protection under the copyright laws. The majority concludes that in the overall arrangement of the text, the art work and the association of the art work to the text, the cards were copyrightable and the copyright infringed. This conclusion, as I view it, results in the whole becoming substantially greater than the sum total of its parts. With this conclusion, of course, I cannot agree.

The majority relies principally on Detective Comics, Inc. v. Bruns Publications, Inc., 111 F.2d 432 (2d Cir. 1940). This case, as I read it, does not even intimate that the whole can exceed the sum total of its parts. It involved an intimation of the "Superman" image by a rival company. In finding infringement, the "Superman" court emphasized

that "So far as the pictorial representations and verbal descriptions of 'Superman' are not a mere delineation of a benevolent Hercules, but embody an arrangement of *incidents and literary expressions original with the author*, they are proper subjects of copyright and susceptible of infringement because of the monopoly afforded by the Act." p. 433 (Emphasis added.) Moreover, the "Superman" case involved the creation of a character, a written dialogue and description which were clearly protected by copyright law in much the same way that a dialogue and description found in a novel is protected. The district court[1] in the "Superman" case found that both the art work and the text materials were copyrightable and that each was infringed. In the case before us, the findings of the trial judge are in direct opposition to appellant's contentions. The language of the district court in "Superman" is worthy of note: "Short of 'Chinese copies' of the plaintiff's 'Superman' strip, the defendant could hardly have gone further than it has done." P. 400. The challenged cards before us, I submit, in no way resemble "Chinese copies" of appellant's material. Other cases cited by the majority are no more in point than *Detective Comics*.

Aside from the above, I call attention to the fact that a number of experts appeared in the lower court and testified that the phrases on the cards were in *common use and that Roth's writer often obtained his ideas from others*. In these circumstances, we should not set aside the findings of the lower court. Williams v. Kaag Manufacturers, Inc., 338 F.2d 949 (9th Cir. 1964). Beyond that, ordinary phraseology within the public domain is not copyrightable. Dorsey v. Old Surety Life Insurance Co., 98 F.2d 872 (10th Cir. 1938); American Code Co. v. Bensinger, 282 F. 829 (2d Cir. 1922).

Feeling, as I do, that the copyright act is a *grant of limited monopoly* to the authors of creative literature and art, I

1. Detective Comics, Inc. v. Bruns Publications, Inc., 28 F.Supp. 399, 400 (D.N.Y.1939).

do not think that we should extend a 56-year monopoly in a situation where neither infringement of text, nor infringement of art work can be found. On these facts, we should adhere to our historic philosophy requiring freedom of competition. I would affirm.