**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JADA TOYS, INC. a California
corporation,
          *Plaintiff-Counterdefendant-*
                        *Appellee,*

              v.

MATTEL, INC., a Delaware
corporation,
          *Defendant-Counterclaimant-*
                        *Appellant.*

No. 05-55627

D.C. No.
CV-04-02755-RGK
(FMO)

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
April 12, 2007—Pasadena, California

Filed August 2, 2007

Before: Harry Pregerson and Johnnie B. Rawlinson,
Circuit Judges, and Brian E. Sandoval,* District Judge.

Opinion by Judge Sandoval

*The Honorable Brian E. Sandoval, United States District Judge for the
District of Nevada, sitting by designation.

**COUNSEL**

Adam R. Fox, Esq., Los Angeles, California, for plaintiff-counterdefendant-appellee Jada Toys, Inc.

Jill M. Pietrini, Esq., Los Angeles, California, for defendant-counterclaimant-appellant Mattel, Inc.

## OPINION

SANDOVAL, District Judge:

Defendant-Appellant Mattel, Inc. ("Mattel") appeals the grant of summary judgment in favor of Jada Toys, Inc. ("Jada") on Mattel's federal and state trademark infringement counterclaims. Mattel also challenges the district court's entry of summary judgment in favor of Jada as to its dilution and copyright claims.

We hold that because the district court erred in its application of the relevant infringement test, the district court's entry of summary judgment in Jada's favor as to those claims is reversed. We also hold that genuine issues of material fact exist as to Mattel's copyright and dilution claims and, therefore, the district court's entry of summary judgment as to those claims in favor of Jada is also reversed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Jada Toys is a California corporation that specializes in the distribution and sale of miniature diecast toy cars, trucks, and other vehicles. Generally, these vehicles are scale model replicas of actual vehicles. From 2001 to 2004, Jada produced a line of toy trucks called HOT RIGZ.

In 2001, Jada filed an application for a trademark registration of the term HOT RIGZ with the United States Patent and Trademark Office ("U.S. PTO"). The trademark was issued by and registered with the U.S. PTO in 2002, though Jada used its HOT RIGZ trademark in advertising material and on its toys and their packaging from 2001 to 2004.

Mattel is also a toy company. Among its many lines of toys is its familiar HOT WHEELS miniature vehicle brand, which it has been marketing since 1968. The HOT WHEELS vehicle line includes small scale versions of big rig trucks. Since

1968, Mattel has employed the use of a flame logo ("68 logo") to identify the HOT WHEELS brand. In 1982 Mattel developed a complementary version of the 68 logo, this one incorporating the Mattel seal, to be used in conjunction with the sale of its product. Mattel owns U.S. federal trademark registrations for both of these flame logos.

On April 20, 2004, Jada filed an action against Mattel, asserting claims for trademark infringement, false designation of origin, and unfair competition. Jada's allegations, however, were not related to its HOT RIGZ mark; rather, Jada claimed that Mattel's advertising and sale of its OLD SCHOOL and NEW SCHOOL lines infringed on Jada's use of its registered trademark OLD SKOOL. Mattel asserted various affirmative defenses and counterclaims. Among the counterclaims were allegations that Jada's HOT RIGZ mark infringed on Mattel's HOT WHEELS mark.[1] Mattel also counterclaimed for copyright infringement and dilution. Ultimately, each party submitted motions for summary judgment.

On March 15, 2005, the district court issued its ruling regarding the parties' motions for summary judgment. As to Jada's claims relating to Mattel's OLD SCHOOL and NEW SCHOOL marks, the court granted summary judgment in Mattel's favor. And as to Mattel's counterclaims for infringement, copyright, and dilution, relating to Jada's use of its HOT RIGZ logo, the court granted summary judgment in Jada's favor. In granting summary judgment as to Mattel's infringement claims, the district court relied on the dissimilarity of the marks alone to determine that no likelihood of confusion existed. Mattel timely appealed the grant of summary judgment as to its counterclaims.

---

[1]Mattel alleged four separate infringement claims: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) common law unfair competition and unfair competition under California Business and Professions Code section 17200; and (4) common law passing off.

## II. STANDARD OF REVIEW

The review of a grant of summary judgment as to an infringement claim is *de novo*. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). As such, we "must determine whether, 'viewing the evidence in the light most favorable to the nonmoving party, . . . there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law.' " *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 809-10 (9th Cir. 1997)). "Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Id.* (quoting *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999)). The Court may affirm a judgment on any ground fairly supported by the record. *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989) (citing *DeNardo v. Murphy*, 781 F.2d 1345, 1347 (9th Cir. 1986), *cert. denied*, 476 U.S. 1111 (1986)).

## III. ANALYSIS

## A. MATTEL'S TRADEMARK CLAIMS

All of Mattel's infringement claims are subject to the same test. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (citing *Rodeo Collection, Ltd. v. W. Seventh,* 812 F.2d 1215, 1217 (9th Cir. 1987)); *see also Vuitton Et Fils S.A. v. J. Young Enter.*, 644 F.2d 769, 777 (9th Cir. 1981) (noting that if a product is marketed in such a way so as to cause a likelihood of confusion, the defendant might be guilty of "palming off"). Therefore, the critical determination is " 'whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product.' " *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003) (quoting *Thane Int'l Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002)).

**[1]** We employ an eight factor test ("*Sleekcraft* factors") in determining the likelihood of confusion. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053-54 (9th Cir. 1999). These factors include: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) (citations omitted).

**[2]** We have previously noted that the test for likelihood of confusion is "pliant," and that "[s]ome factors are much more important than others, . . . ." *Brookfield*, 174 F.3d at 1054. Jada seizes on such language as an indication that the district court's consideration of the dissimilarity of the marks alone was sufficient to support its conclusion. We disagree.

**[3]** Though the language we have used warns against "excessive rigidity" in applying the test, *see id.*, we have never countenanced a likelihood of confusion determination based on a consideration of dissimilarity alone or, indeed, on the consideration of any single factor. Instead, we have regularly applied all the relevant factors, noting that a final likelihood of confusion determination may rest on those factors that are of the most relative importance in any particular case. *See, e.g. Surfvivor*, 406 F.3d at 631-34 (applying all eight factors and noting that "the test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them."). Thus, while a likelihood of confusion determination may ultimately rest on a subset of factors, evidence of relatively important factors must be considered as part of that set. In the context of two subjectively dissimilar marks, evidence of actual confusion and evidence defining the context in which the goods are sold is particularly relevant.

To hold otherwise would allow the possibility that persuasive evidence of a particular factor may be considered at the expense of relevant evidence of others. This problem is particularly acute where, as here, a court relies on the dissimilarity of the marks to conclude that no likelihood of confusion exists. In such a case, the potential for a judge to elevate his or her own subjective impressions of the relative dissimilarity of the marks over evidence of, for example, actual confusion, is great. And where the subjective impressions of a particular judge are weighed at the expense of other relevant evidence, the value of the multi-factor approach sanctioned by this Court is undermined.

**[4]** Today's holding is consistent with our prior decisions. For while Jada accurately cites language from the case law of this Circuit suggesting that dissimilarity alone may be a sufficient basis upon which to judge the likelihood of confusion, *Brookfield*, 174 F.3d at 1054; *Sleeper Lounge Co. v. Bell Mfg Co.*, 253 F.2d 720, 723 (9th Cir. 1958), we conclude that the language employed in those cases constitutes dicta and, therefore, we are not bound by it. *See Inlandboatmens Union of Pac. v. Dutra Group*, 279 F.3d 1075, 1081 (9th Cir. 2002) (holding that a panel is not bound by dicta in prior decisions).

In *Brookfield*, for example, we stated that "[w]here the two marks are entirely dissimilar, there is no likelihood of confusion. 'Pepsi' does not infringe Coca-Cola's 'Coke.' Nothing further need be said." *Brookfield*, 174 F.3d at 1054. In *Brookfield*, however, we did not conclude that the marks in question were so dissimilar that no likelihood of confusion could exist. *Id.* at 1054-55. To the contrary, we found that the marks were quite similar. *Id.* Moreover, there is no indication that in *Brookfield* we ignored evidence of other important factors in determining that dissimilarity could be determinative. *See id.* at 1054-60. And, beyond that, there was no evidence of actual confusion presented in the case. *Id.* at 1060. Thus, in *Brookfield* we were not confronted with a situation where, as here, strong evidence of other important factors existed to counter

the conclusion that dissimilarity alone could be dispositive. Consequently, in *Brookfield* we were not afforded the opportunity to fully consider the ramifications of our comment.

The same is true of our decision in *Sleeper Lounge*. There, we noted that "[similarity of the marks] is the one essential feature, without which the others have no probative value." *Sleeper Lounge*, 253 F.2d at 723. But as was the case in *Brookfield*, in *Sleeper Lounge* we expressly noted that no evidence of actual confusion had been presented. *Id.* Thus, in *Sleeper Lounge* we were no more able to fully consider the impact of our statement than we were in *Brookfield*.

**[5]** While the *Brookfield* and *Sleeper Lounge* decisions offer important insight into the persuasiveness of dissimilarity, we must, nonetheless, conclude that though it may be true that very dissimilar marks will rarely present a significant likelihood of confusion, dissimilarity alone does not obviate the need to inquire into evidence of other important factors. Only upon such an inquiry may a court ensure that its judgment as to the likelihood of confusion is fully informed and without error. Therefore, because the district court considered only the dissimilarity of the marks in question, we reverse its grant of summary judgment in favor of Jada.

## B.  MATTEL'S DILUTION CLAIM

**[6]** Mattel brought dilution claims under both federal and California state law.[2][3] The analysis under each is the same.

---

[2]Mattel's federal claim falls under 15 U.S.C. § 1125(c)(1): "[t]he owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." Because this action was filed in 2004, prior to the 2006 amendment of § 1125, *see* Trademark Dilution Revision Act of 2006, Pub. L. No. 109-312 § 2(1), 120 Stat. 1730, the previous version of § 1125 applies, codified at 15 U.S.C. § 1125(c)(1) (2000).

[3]Mattel's state law claim falls under California Business and Profes-

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998). "In order to prove a violation . . . a plaintiff must show that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Id.* (citing 15 U.S.C. § 1125(c)).

**[7]** Neither federal law nor California state law requires a showing of competition or likelihood of confusion to succeed on a dilution claim. *See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004) (citing 15 U.S.C. § 1127); Cal. Bus. & Prof. Code § 14330. However, for a plaintiff to establish that the mark is being used in commerce (as per step two),"the mark used by the alleged diluter must be identical, or nearly identical, to the protected mark." *Thane Int'l*, 305 F.3d at 905 (citation omitted). In order to be nearly identical, two marks "must be 'similar enough that a significant segment of the target group of customers sees the two marks as essentially the same' " *Id.* at 906 (quoting *Playboy Enters. Inc. v. Welles*, 279 F.3d 796, 806 n.41 (9th Cir. 2002)).

Here, the district court granted summary judgment in favor of Jada on Mattel's dilution claims because the marks at issue were not identical or nearly identical. Mattel claims that since it has shown a likelihood of confusion, that finding was inappropriate.

Jada claims, on the other hand, that the district court's

sions Code section 14330: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter . . . shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

determination that the marks were not identical is supported by the record and therefore summary judgment was appropriate. Jada also contends that Mattel has not made a showing of actual dilution sufficient to support its claim under federal law. And as to Mattel's state law claim, Jada argues that Mattel is barred from such a claim because Jada owns a valid federal registration mark, which acts as a complete bar to a dilution claim under state law. 15 U.S.C. § 1125(c)(3).[4]

[8] Turning first to the district court's determination that the marks in question were not sufficiently identical, we conclude that a reasonable trier of fact could find that the HOT WHEELS and HOT RIGZ marks are nearly identical. They both contain the word "hot," they both are accompanied by a flame, and they use similar colors; they also convey a similar meaning and connotation *vis a vis* their use of the modifier "hot." *Cf. Thane Int'l*, 305 F.3d at 907 (holding that a reasonable trier of fact could conclude that the marks "OrbiTrek" and "TREK" were nearly identical).

In determining the degree of fame a mark retains, 15 U.S.C. § 1125(c) lists eight factors that a Court may consider, though no single factor is determinative. *Thane Int'l*, 305 F.3d at 907 (stating that the eight-factor test is "flexible").[5] In addition, to

---

[4]Jada's claim that its HOT RIGZ registration acts as a bar to Mattel's state law claim is misplaced because Mattel's eighth counterclaim is for cancellation of the HOT RIGZ registration under 15 U.S.C. § 1064. As such, if Mattel can succeed in obtaining that cancellation, the bar to state unfair competition actions found in 15 U.S.C. § 1125(c)(3) will be inapplicable.

[5]These factors include: "the degree of inherent or acquired distinctiveness of the mark; the duration and extent of the use of the mark in connection with the goods and services with which the mark is used; the duration and extent of advertising and publicity of the mark; the geographical extent of the trading area in which the mark is used; the channels of trade for the goods or services with which the mark is used; the degree of recognition the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; the nature and extent of the use of the same or similar marks by third parties; and whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or the principal register." 15 U.S.C. § 1125(c)(1).

be considered famous the mark must be "truly prominent and renowned." *Id.* at 908 (citing *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999)).

**[9]** Here, a reasonable trier of fact could conclude that the HOT WHEELS mark is famous: it has been in use for over thirty-seven years; $350 million has been expended in advertising the mark; three billion HOT WHEELS units have been sold since the inception of the mark; and HOT WHEELS are sold in all fifty states and throughout the world.

**[10]** A reasonable trier of fact could also conclude that Jada began using its mark after HOT WHEELS became famous. The HOT WHEELS mark has been in use since 1968, but it was only in 2001 that Jada began to employ the use of HOT RIGZ. Thus, the HOT WHEELS mark had been acquiring recognition for over thirty years before HOT RIGZ entered the market.

**[11]** The federal dilution statute also requires a showing of actual dilution. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003). But "that does not mean that the consequences of dilution, such as an actual loss of sales or profits, must also be proved." *Id.* Instead, where the marks in question are identical, the fact of identity alone is sufficient circumstantial evidence of actual dilution. *Id.* at 434. However, where the marks are not identical, direct evidence of actual dilution, e.g., consumer surveys, is required to make the requisite showing. *Id.* Those surveys, though, must establish more than the fact that consumers mentally associate one mark with the other; they must indicate that the mental association that occurs reduces the capacity of the famous mark to identify its goods. *Id.* at 433-34.

**[12]** While a reasonable trier of fact could conclude that the marks at issue here are nearly identical, it is not the case that they could be considered actually identical. As a result, Mattel must submit direct evidence of actual dilution to create a gen-

uine issue of material fact on this issue. *See id.* Here, Mattel submitted two surveys to show actual dilution. In the first survey, respondents were exposed to the HOT RIGZ name and asked who they believed "puts out or makes" a toy vehicle with that name. Twenty-eight percent of respondents thought that the toy vehicle put out under that name was either made by Mattel or by the same company that produced HOT WHEELS, or that whatever company did produce it required permission from Mattel to sell the product.

In a separate survey, respondents were shown a HOT RIGZ package and asked who they thought put out that product. Of the respondents, 7% believed it was either made by Mattel or by the same company that produced HOT WHEELS, or that whatever company did produce it required permission from Mattel to sell the product.

**[13]** These surveys do more than indicate that consumers associate one mark with the other; they suggest that Mattel's HOT WHEELS mark does not adequately identify its product because Jada is able to convey, through the use of its HOT RIGZ mark, the impression that Mattel either produces or allows the production of HOT RIGZ. Thus, a reasonable trier of fact could conclude that this evidence was sufficient to establish the existence of actual dilution.[6] The district court's entry of summary judgment is, therefore, reversed.

## C.  MATTEL'S COPYRIGHT CLAIMS

In order to succeed in a copyright infringement claim, "a plaintiff must show that he or she owns the copyright and that defendant copied protected elements of the work." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (citing *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990)). The protected elements of a work are those elements which

---

[6]The evidence of actual dilution here is also enough to support the California dilution statute's requirement of a "likelihood of dilution."

are "original," which is to say they are the product of "independent creation, not novelty." *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970) (citations omitted).[7] Copying can be proved by evidence indicating that the infringer had access to the copyrighted work and that the protected portions of the works are substantially similar. *Id.* at 1110.

This Court employs a two-part test to determine whether two works are substantially similar. The first part, the extrinsic test, focuses on the similarity of the ideas expressed. *Sid & Marty Krofft Television Prod., Inc. v. McDonalds Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977). The extrinsic test is objective and involves an analysis of "the type of artwork at issue, the materials used, the subject matter, and the setting for the subject." *Id.* The second part, the intrinsic test, focuses on the similarity in expression. *Id.* This test is subjective and thus turns on the impressions of the average reasonable observer. *Id.*

In this case, the district court concluded that because the marks at issue were not similar, the extrinsic test was not met. It also found that since the marks were not similar, no reasonable person could believe that they conveyed a similar expression and therefore the intrinsic test had not been satisfied.

**[14]** We hold, however, that a reasonable trier of fact could conclude that the marks are objectively similar. It could also be argued that, given the similarity of the marks, a reasonable observer of the two marks could understand the HOT RIGZ mark to be expressing the sense that the product sold under

---

[7]Jada does not dispute that Mattel retains copyrights for its HOT WHEELS flame logos. Jada also only tangentially disputes that some elements of the flame logos are not protectable. However, the combination of the words used, the stylization of the flame graphic, and the colors chosen, suggest that elements of the flame logo are protectable for the purposes of a copyright infringement action. *Cf. Roth Greeting Cards*, 429 F.2d at 1109.

that mark is, essentially, a HOT WHEELS product. Therefore, the district court's entry of summary judgment in favor of Jada as to Mattel's copyright claim is reversed.

## IV.   CONCLUSION

The district court's reliance on a single *Sleekcraft* factor — dissimilarity of the marks — in its likelihood of confusion determination was in error; therefore, its entry of summary judgment in Jada's favor as to Mattel's trademark claims is reversed. Those claims are hereby remanded for consideration consistent with this opinion. Mattel also raised a genuine issue of material fact as to its dilution and copyright claims; thus, the district court's entry of summary judgment in favor of Jada as to those claims is also reversed. Those claims are hereby remanded for trial.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.